[Crim. No. 1381. First Appellate District, Division One.—October 18, 1927.]

THE PEOPLE, Respondent, v. THEODORE WILSON et al., Appellants.

William J. Gloria, Alfred J. Hennessy and Austin W. Arnold for Appellants.

U. S. Webb, Attorney-General, and Lionel B. Brown, Deputy Attorney-General, for Respondent.

TYLER, P. J.—Appellants, together with Charles Carlisle and Ernest Apac, were jointly indicted by the grand jury of the city and county of San Francisco of the crime of robbery. Carlisle and Apac were not apprehended and now are fugitives from justice. Defendants Wilson and De Bardeleben, appellants herein, were jointly tried in said city and county upon the charge and were convicted of robbery in the second degree. The indictment is in two counts. The first charges the four defendants with the commission of the crime of robbery committed on the eleventh day of November, 1926, at an unknown place in the state of California. It alleges that defendants feloniously took from the person of one Harold Turney certain personal property by putting him in fear and that thereafter they brought said property into the city and county of San Francisco. The second count is identical with the first except that it accused the same persons of committing the same crime against the

person of Margaret Turney, wife of Harold Turney. Defendants were found guilty upon both counts. In brief, the evidence shows that defendants, both ex-convicts, had planned with Turney and his wife for an automobile trip. On November 11, 1926, at about 7 o'clock in the evening, they met by arrangement and proceeded along the Skyline Boulevard to the vicinity of Colma, in San Mateo County. At this time one of the defendants suggested that they procure some wine, and Mrs. Turney, who was driving the machine, was instructed to turn off the light, she being informed that the bootleggers objected to a lighted machine. They then proceeded along a dirt road in the neighborhood, and when they had traveled a short distance all of the defendants set upon and beat and robbed Turney. They procured from him certain sums of money and other personal property. Thereafter two rings were taken from Mrs. Turney. The evidence further shows that the robbery took place somewhere near the county line dividing San Francisco and San Mateo Counties. Turney reported the robbery to the San Francisco police authorities. The officers obtained information that defendants resided at a certain rooming-house on McAllister Street, San Francisco, and they proceeded there to make an arrest. They demanded entrance into the premises. Defendant De Bardeleben was in bed and he requested that the officers wait until he put on his clothes, whereupon they attempted to gain entrance to the premises through a window. Shooting immediately commenced, resulting in the wounding of two of the officers and the killing of one Joe Tanko, a fugitive from justice. Upon search being made of the premises, certain of the personal property taken from the Turneys was found. Upon conviction defendants moved, upon various grounds, for a new trial and in arrest of judgment. These motions were denied and separate appeals were taken from the final judgment of conviction, and from the order denying the motions for a new trial. Appellant Wilson in support of his appeal contends that the judgment and order respecting him should be reversed for several reasons. It is first claimed that the superior court in and for the city and county of San Francisco had no jurisdiction of the case for the reason that the indictment does not designate the county in which the crime charged was committed. It appears from the evidence taken before the grand jury, which

is a part of the record, that the offense took place on a road bordering the two counties, but it is indefinite as to the exact location where the crime was actually committed and it was for this reason, no doubt, that the indictment was made to recite that the place was unknown in order to avoid a variance. The indictment recites that the offense was committed in the state of California and at a place to the grand jury unknown and that thereafter defendants did unlawfully and feloniously bring the property so taken into the city and county of San Francisco. ██ Generally speaking, it is a fundamental rule of criminal procedure that one who commits a crime is answerable therefor only in the jurisdiction where the crime is committed, and in all criminal prosecutions, in the absence of statutory provisions to the contrary, the venue must be laid in such jurisdiction. In conformity with this rule our Penal Code provides that, except as otherwise provided, the jurisdiction of every public offense is in the county where it is committed (sec. 777).

██ At common law, the crime of robbery was considered altogether local, and was cognizable and punishable exclusively in the jurisidiction where committed. In this state, however, it is provided by statute that when property taken in one county by burglary, robbery, larceny, or embezzlement has been brought into another county, the jurisdiction of the offense is in either county. (Pen. Code, sec. 786.) As in larceny at common law, this section makes the asportation of the fruits of a robbery the commission of the crime of robbery in the county where the goods are brought. ██ Where, therefore, property is obtained in the commission of any of the crimes enumerated in the section in one county and carried into another, in legal contemplation such crimes are committed in both jurisdictions and may be punished in either, and where, as here, the indictment alleges that the stolen property was brought into the county of San Francisco, it in effect charges a robbery in San Francisco, and the exact location within the state where the original crime was committed is a matter of evidence. (*People* v. *Staples*, 91 Cal. 23 [27 Pac. 523]; *People* v. *Sing*, 42 Cal. App. 385–394 [183 Pac. 865]; 7 Cal. Jur. 912.) ██ The only conclusion that can possibly follow from the charges contained in the indictment is that a crime was committed in a county within the state and the

stolen goods brought into the county of San Francisco, for before property could be brought into the city and county of San Francisco it had to be, in the first instance, taken from a point outside such city and county, and this is all that is required under the statute. All persons who commit in whole or in part any crime within the state are punishable under its laws (Pen. Code, sec. 27, subd. 1). ▮ An indictment charging an offense is sufficient if it can be understood therefrom that the offense was committed within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county is triable therein, and the acts and omissions are clearly and distinctly set forth in such a manner as to enable a person of common understanding to know what is intended (Pen. Code, sec. 959). Strict technical rules formerly governing proof of such matters have been greatly relaxed by statutory enactment and by modern courts of criminal jurisdiction. No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendants upon its merits (Pen. Code, sec. 960). Here the gist of the charge is that defendants committed the crime of robbery some place within the state and that they brought the fruits thereof into the county of San Francisco. This being so, the venue is laid within the jurisdiction of the court. The indictment fully and correctly informs the defendants of the criminal act charged, and they could not possibly have been misled in making their defense. The omission of the name of the county where the actual robbery was committed in no manner affected the jurisdiction of the court, as under the statute the offense could be tried in either county, and it certainly did not affect their substantial rights. ▮ Equally without merit is the claim that the evidence is insufficient to convict either of the defendants. The evidence shows that the robberies were both committed at the time and that all the parties charged participated in the act. What we have said with reference to the points urged on behalf of appellant Wilson disposes of the contentions of appellant De Bardeleben except his exception to the reference made by the district attorney in his opening statement to the jury that Joe Tanko was present at the time of

De Bardeleben's arrest. █ Reference was made throughout the trial to the presence of Tanko in the premises where the arrest was made and while objected to no error was assigned in consequence thereof. It was proper to show under what circumstances the arrest was made and the fact that Tanko was killed was one of the circumstances. Moreover, no instruction was offered that the jury disregard any reference to this fact.

The judgment and orders as to both of the defendants are affirmed.

Knight, J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 16, 1927, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 15, 1927.